UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**NATIONAL ROOFERS UNION AND
EMPLOYERS JOINT HEALTH AND
WELFARE FUND, ET AL.**

          CIVIL ACTION

**v.**

          NO. 13-597-JWD-EWD

**ASCENSION SHEET METAL, LLC
F/K/A ASCENSION ROOFING &
SHEET METAL, INC., ET AL.**

*consolidated with*

**NATIONAL ROOFERS UNION AND
EMPLOYERS JOINT HEALTH AND
WELFARE FUND, ET AL.**

          CIVIL ACTION

**v.**

          NO. 16-11-JWD-RLB

**JR I-CON, LLC, ET AL.**

## RULING AND ORDER

This matter is before the Court on Plaintiffs' Motion in Limine to Exclude Exhibits and Testimony Regarding Drug Screen Reports. (Doc. 67). Defendants oppose the motion. (Doc.75.) Oral argument is not necessary. Having carefully considered the law, facts in the record, and arguments of the parties, Plaintiffs' motion is granted.

This ruling requires a certain amount of background. In this case, Plaintiffs, two fringe benefit funds (collectively "The Funds"), are seeking to collect delinquent contributions allegedly owed by Ascension Sheet Metal, LLC and JRE, LLC (collectively "Defendants") for nonunion employees performing work covered by a collective bargaining agreement ("CBA"). Defendants and the United Union of Roofers, Waterproofers and Allied Workers Local #317 ("Union") entered into the CBA at issue in this case. Pursuant to that agreement, Defendants agreed to make certain contributions to The Funds.

On December 16, 2014, The Funds filed a motion for summary judgment on their claims, and, on June 29, 2015, this Court issued a Ruling and Order (Doc. 47) granting in part and denying in part The Funds' motion.  There, as here, Defendants sought to avoid liability by arguing that the Union violated the CBA by failing to provide necessary, drug-free employees. (*See* Doc. 47 at n. 12.)  In rejecting this argument, this Court explained, "The Fifth Circuit has stated that there are only three recognized defenses to delinquency actions: (1) the pension contributions are illegal, (2) the CBA is void ab initio, e.g., for fraud in the execution, and (3) the employees have voted to decertify the union as their bargaining representative." (*Id.* at 14 (citing *Louisiana Bricklayers & Trowel Trades Pension Fund & Welfare Fund v. Alfred Miller Gen. Masonry Contracting Co.*, 157 F.3d 404, 408 (5th Cir. 1998)).  This Court also found, "The Funds in this case are third-party beneficiaries to the CBA between the Defendants and the Union. Thus, Defendants cannot use the Union's alleged breach of the CBA to avoid their obligation to make contributions to fringe benefit funds." (Doc. 47 at 15.)  The Court held that, as a matter of law, Defendants owe contributions for union and nonunion employees that accrue from January 2014 until the CBA is terminated. (*Id.* at 40.) However, the amount of contributions was an issue for trial. (*See id.*)

The Court also issued a related ruling on Plaintiff's Motion to Strike Exhibits Attached to Defendants' Rebecca Evans Mouk Affidavit in Opposition to Plaintiffs' Motion for Summary Judgment. (Doc. 46.)  The Funds sought to exclude two employee drug tests that the Defendants contended were relevant to showing whether the Union could fulfill its contractual duties.  In granting the motion, the Court held:

> In *Shreveport Elec. Profit Sharing Plan v. Roper Elec. Co.*, 04-1730, 2006 WL 149033 (W.D. La. Jan. 18, 2006), the Western District had a similar case brought by benefit plans seeking delinquent contributions from an employer. The Western District explained:

> The Benefit Plans are third-party beneficiaries of the collective bargaining agreement between [the defendant] and the Union. *See Agathos v. Starlite Motel,* 977 F.2d 1500, 1505 (3rd Cir. 1992) (citation omitted). The rights of third-party beneficiaries typically are subject to any defenses that the promisor could assert in a suit by the promisee. *Id.* (*citing* J. Calamari & J. Perillo, *The Law of Contracts* § 17-10 (3d ed. 1987)). Collective bargaining agreements, however, are not typical third-party beneficiary contracts. *Id.* (*citing Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 468-69, 80 S. Ct. 489, 495, 4 L.Ed.2d 442 (1960)). In *Lewis,* the Supreme Court held that a union's breach of a collective bargaining agreement could not avoid an employer's obligation to make contributions to a union welfare fund, unless the parties agreed to preserve such a defense in unequivocal words. *Id.* at 470-71, 80 S. Ct. at 495-96.
>
> *Roper Elec. Co.*, 2006 WL 149033, at *5.
> Similarly, The Funds in this case are third-party beneficiaries to the CBA between the Defendants and the Union. Thus, state law aside, Defendants cannot use the Unions alleged breach of the CBA to avoid their obligation to make contributions to fringe benefit funds. *See Id.*
> Defendants' argument in opposition to the Motion to Strike concerns an alleged breach of the CBA by the Union. However, this case concerns allegedly delinquent contribution payments The Funds assert Defendants owe for nonunion employees performing work under the CBA. Thus, any breach of the CBA by the Union is not relevant to whether Defendants owe contributions. Therefore, the two drug tests Defendants attach to their affidavit (Doc 38-4) and (Doc. 38-5) are not relevant to this matter and will not be considered by the Court in ruling on The Funds Motion for Summary Judgment.

(Doc. 46 at 2-3.)

Based on the Court's prior ruling, The Funds now seek to exclude exhibits and testimony regarding drug tests. Defendants respond that the failed drug tests are relevant to the issue of "how far in time the [CBA] was in effect." Defendant contends that the CBA was terminated on or before November 30, 2014, by the Union's breach and that, as a result, Defendants owe no contributions after the termination. In short, according to Defendants, the drug tests are relevant as to timing.

The Court rejects Defendants' argument. While the Defendants characterize the issue as when the termination occurred, this argument ultimately rests on the same previously rejected premise – that the Union failed to supply adequate workers, so the Union breached the CBA, so

3

the Defendants did not have to make any contributions after that breach. The Court specifically rejected this (or at the very least, a substantially similar) argument in its Ruling and Order on the motion for summary judgment (see Doc. 47 at 15). The Court also rejected this argument in granting the motion to strike the drug tests. (Doc. 46 at 2-3). In short, the Defendants cannot escape liability through these drug tests; they are irrelevant, and any testimony related to them is irrelevant as well.

The Fifth Circuit has cautioned that federal courts should not "usurp the NLRB's function in the labor arena . . . by deciding if and when a facially valid CBA becomes unenforceable." *Alfred Miller*, 157 F.3d at 408; *see also id.* at 409 n. 12 (rejecting defense that letter terminated the CBA and noting, "Although a district court may consider the significance of a purported termination, the court's examination must end following a superficial inquiry into the termination's effect. . . . [I]f the issue of termination cannot be resolved through cursory review, the defense to a section 515 action will not succeed."). Moreover, "[o]nce an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, *he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole.*" *Id.* at 408-409 (quoting *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir.1990)) (emphasis in *Alfred Miller*).

As stated above, jurisprudence recognizes only certain, limited defenses in delinquency actions, and the Defendants have still provided no authority supporting their argument that the Union's alleged failure to provide "workers that would meet the basic employment needs of the" Defendants is a cognizable defense against The Funds that can be asserted in this action. Defendants cannot prevail merely by characterizing the issue in terms of timing when the essence of the argument is enforceability of the CBA.

In sum, the drug tests are not relevant and should be excluded. Even if they were relevant, their probative value (even in this bench trial) would be substantially outweighed by their prejudicial effect. Accordingly,

**IT IS ORDERED** that Defendant's Motion in Limine to Exclude Exhibits and Testimony Regarding Drug Screen Reports (Doc. 67) is **GRANTED**, and

**IT IS FURTHER ORDERED** that Defendant's exhibits #37 and 38 (drug screen reports), and any testimony related to such drug tests, are **EXCLUDED**.

Signed in Baton Rouge, Louisiana, on April 15, 2016.

_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**